## Folsom *vs.* Mussey.

In all written simple contracts, evidence of the consideration may be received, in an action between the original parties.

Therefore, where the defendant, being agent of the plaintiff for the sale of his lumber, had sold some and taken the purchaser's note for the amount, payable to the plaintiff; and afterwards the plaintiff, being apprehensive of suits by his own creditors, made a sale of this note and of the rest of his lumber to the defendant, taking his note for the estimated amount, but under a verbal agreement that the defendant should be holden to pay only so much as he might actually realize from the property, in the same manner as if no note had been given; it was held that these circumstances might be shown in defence against an action upon the note, to avail so far as they might prove a partial failure of consideration; but that they did not absolve the defendant from the obligation to use diligence in collecting the note sold to him.

*Assumpsit* on a promissory note dated *July* 1, 1828, given by the defendant to the plaintiff, for six hundred and fifty-three dollars and forty-three cents, payable in nine months. At the trial, which was before *Weston J.* upon the general issue, the defence set up was, that under the circumstances in which the note was given, connected with subsequent facts, the defendant ought not to be holden beyond the amount paid and indorsed on the note. The admissibility of proof of these circumstances and facts was opposed by the plaintiff; but the objection was overruled; and the facts proved were as follows.

The defendant was a wharfinger in *Gardiner*, to whom the plaintiff, living in *Palmyra*, had been in the practice of sending his lumber, of various kinds, for sale; which the defendant sometimes sold for cash, and sometimes on credit. Whenever he made sales, he credited the plaintiff with the amount; it being however understood that he was not to be debtor therefor to the plaintiff, till he should actually receive the money. On the 10th of *June*, 1828, he sold to one *Houdlette* four hundred and seventy-eight dollars and fifty-six cents worth of the plaintiff's lumber, taking his negotiable note for that sum, payable to the plaintiff in ninety days; the purchaser

being then in good credit, and the time comporting with the usage in such cases. For the proceeds of this sale, among others, the plaintiff was credited in the defendant's books. On the day of the date of the note now in suit, the plaintiff, wishing to make arrangements to preserve his property from being sacrificed by his creditors, made a nominal sale to the defendant, of all his lumber then on the defendant's wharf; for the amount of which, and of the sum credited as above to the plaintiff in the defendant's books, including the amount sold to *Houdlette*, the note in controversy was given; it being then agreed by the parties that the defendant should sell the lumber, and collect what was due for what had already been sold, and account to the plaintiff for the same, in the same manner as if no note had been given; and that his liability to the plaintiff should not be changed or affected by his giving the note. The plaintiff then indorsed the note of *Houdlette*, and delivered it to the defendant. It did not appear that the defendant took any measures for the collection of this note, though *Houdlette* continued in extensive business, till sometime in *November*, after its maturity; when his solvency beginning to be suspected, the defendant actively adopted prudent measures to secure the debt, which, however, proved of no avail.

The counsel for the defendant requested the Judge to instruct the jury, first, that the plaintiff living only forty or fifty miles from *Gardiner*, and being frequently at this place, the defendant was not bound to commence a suit against *Houdlette*, without an express request; secondly, that the plaintiff, knowing the person to whom the credit was given, was bound to give such direction to the defendant as he wished him to follow: And thirdly, that the defendant, without such direction, would not be guilty of negligence by omitting to put the note in suit; especially at his own expense.

These instructions the judge declined to give; but he did instruct the jury that if, from the evidence, they were satisfied that the defendant might have procured payment of that note, or have secured it, by due diligence between its maturity and the time when he began to take measures to that end; he had no claim on the plain-

tiff to be allowed its amount, which was finally lost. And the jury returned a verdict for the plaintiff; which was taken subject to the opinion of the court · upon the questions whether the desired instructions were properly refused ; and whether proper directions were given to the jury.

A motion for a new trial was subsequently filed by the defendant, on the ground of newly discovered evidence.

*Evans*, for the plaintiff, argued that the defence was untenable, as it depended on parol testimony to control a written contract, and to show that an absolute promise to pay on a certain day, was in fact merely a contingent undertaking to pay on the happening of an uncertain event. To which he cited *Stackpole v. Arnold*, 11 *Mass.* 27 ; *Hunt v. Adams*, 7 *Mass.* 518 ; 6 *Mass.* 519 ; *Hanson v. Stetson*, 5 *Pick.* 508 ; *Rose v. Learned*, 14 *Mass.* 154 ; *Woodbridge v. Spooner*, 3 *B. & A.* 233 ; *Free v. Hawkins*, 1 *Moore*, 535 ; *Hoare v. Graham*, 3 *Campb.* 57 ; *Richards v. Kilham*, 10 *Mass.* 244 ; *Preston v. Merceau*, 2 *W. Bl.* 1249 ; *Fitzhugh v. Runyon*, 8 *Johns.* 375 ; *Thompson v. Ketchum*, *ib.* 189 ; *Howes v. Barker*, 3 *Johns.* 498 ; *Deland v. Amesbury Man. Co.* 7 *Pick.* 244. And that the consideration was sufficient ; *Amherst Academy v. Cowls*, 6 *Pick.* 432 ; *Howard v. Witham*, 2 *Greenl.* 393 ; *Train v. Gold*, 5 *Pick.* 384.

*Allen*, for the defendant.

WESTON J. delivered the opinion of the Court.

The defendant having received the *Houdlette* note, in the course of his business, as the factor and agent of the plaintiff, and holding it afterwards in the same capacity, was bound to use due diligence in its collection. Fidelity in his trust, is imposed by the relation in which he stood. In all transactions of trade and commerce, the law requires promptness and vigilance on the part of agents, and of all persons, who happen to be entrusted with the business of others. This is a principle too well settled, to require the citation of authorities for its support. And if they were necessary, those cited by

the counsel for the plaintiff, are full to this effect. If from the want of diligence by the factor, a loss arises to the principal, the factor is bound to make it good. If the jury were satisfied, that the *Houdlette* note was lost by a want of diligence on the part of the defendant, they were instructed that the defendant had no claim to be allowed the amount of that note against the plaintiff.

It was not incumbent on the plaintiff to give special directions, as to the course to be pursued by the defendant. That would depend upon what the exigency of the case required ; which the defendant, residing more in the neighborhood of *Houdlette* than the plaintiff, had the best means of knowing. But if that had not been the case, the business was deputed to him, and the plaintiff had a right to expect, that it would be faithfully performed. The plaintiff was under no obligation to pledge himself expressly, to reimburse any expense, the defendant might necessarily incur in his business. This obligation the law imposed upon him, without a direct promise. We are therefore satisfied, that the instructions requested were properly withheld, and that those given to the jury, were warranted by law.

These are the only points reserved by the report ; but as there is to be a new trial, on account of newly discovered evidence, we have looked into the question, raised at the former trial, and insisted upon in argument by the counsel for the plaintiff, as to the admissibility of the evidence, upon which the defence turned.

It is an undoubted rule of the common law, that parol testimony shall not be received, to vary or contradict a written contract. In support of this principle, many cases have been cited. That the defendant did make the contract declared on, is not to be controverted. It is a note of hand, which like a specialty imports a consideration ; and indeed acknowledges one. Shall this written acknowledgment be contradicted by parol evidence? The rule upon which the defendant relies, strictly understood, would exclude it. And yet that such evidence is admissible for this purpose, is as well settled as the rule. Between the decisions, which illustrate and enforce the rule, and those which recognize the exception, there

may be an apparent discrepancy.    But that will generally be found to arise, from the different aspects, in which they have been viewed.

The case of *Barker v. Prentiss,* 6 *Mass.* 430, and the opinion of Chief Justice *Parsons* there given, has maintained its ground in practice ; although the language used in subsequent opinions, cited for the plaintiff, appear sometimes to lose sight of the distinctions there made.    The position laid down in that case is, that in all written simple contracts, evidence of the consideration may be received, between the original parties.    And this is the uniform practice of our courts.    If upon this inquiry it results, that there was no consideration ; or that it has failed totally or partially ; or that the contract was signed under mistake or misapprehension, the rights of the parties are determined, as the justice of the case requires, upon a view of all the facts.    The plaintiff fails to recover ; or he recovers a part only, of what the note or other contract expresses ; according to equity and good conscience.    Of this character was the evidence received, in the case before us.    It went to the consideration.    The lumber which formed part of the consideration of the note, was assumed to be worth a certain sum ; but its final value was to depend on the sales.    If overvalued, there would be a failure of consideration, by the amount of the excess.    If undervalued, the defendant was to pay the difference.    As the estimate fell short of the value as ascertained, this part of the evidence operated in favor of the plaintiff.

With regard to that part of the note in suit, which arose from the *Houdlette* debt, if that was not at the defendant's risk, if lost without negligence imputable to him, there would be a failure of consideration to that amount.    Now the evidence proves that the defendant did not become the guarantor of the *Houdlette* note, and that it was not taken at his risk.    It has been lost.    That loss must fall upon the plaintiff; unless negligence in relation to it, is chargable upon the defendant.